UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL D.M., <br><br> Petitioner, <br><br> v. <br><br> KRISTI NOEM, Secretary of the United States Department of Homeland Security, and PAMELA BONDI, Attorney General of the United States; CHRISTOPHER CHESTNUT, Administrator of California City Detention Facility; SERGIO ALBARRAN, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. DEPARTMENT OF JUSTICE, <br><br> Respondents. | No. 1:25-cv-01806-KES-EPG (HC) <br><br> ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION <br><br> Doc. 6 |

This habeas action concerns the detention of petitioner Angel D.M., a noncitizen who has lived in the United States for over thirty years.[1]  Petitioner is being detained without the opportunity for a bond hearing based on the government's new interpretation of 8 U.S.C. § 1225(b)(2)(A) as mandating detention for all noncitizens present in the United States without

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information.  *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

admission.  This matter is before the Court on petitioner's motion for temporary restraining order.  Doc. 6.  For the reasons explained below, petitioner's motion for temporary restraining order, which the Court converts to a motion for preliminary injunction, is granted.

## I. Background[2]

Petitioner is a 50-year-old citizen of Mexico who entered the United States in 1990.  *See* Doc. 11-1, Ex. 1.  He had no contact with immigration authorities until 2024 when he applied to adjust his status to that of a lawful permanent resident.  *See* Doc. 1 at ¶ 47; Doc. 11-1, Cruz Decl. at ¶¶ 11–12; Doc. 11-1, Ex. 4.[3]

On November 25, 2025, petitioner appeared for an interview at the United States Citizenship and Immigration Services ("USCIS") office in Fresno, California, in connection with his application for adjustment of status.  *See* Doc. 1 at ¶ 48; Doc. 11-1, Cruz Decl. at ¶¶ 11–13; Doc. 11-1, Ex. 1.  At the USCIS office, Immigration and Customs Enforcement ("ICE") agents arrested petitioner on a warrant for being present in the United States unlawfully.  *See* Doc. 1 at ¶ 48; Doc. 11-1, Ex. 3.  Following his arrest, ICE issued a notice to appear for removal proceedings and charged petitioner as removable under 8 U.S.C. § 1182(a)(6)(A)(i), Doc. 1 at ¶ 54, as "[a]n alien present in the United States without being admitted or paroled."  8 U.S.C. § 1182(a)(6)(A)(i).  Petitioner is now detained at California City Detention Center.  Doc. 1 at ¶ 48.

Several months before petitioner's detention, the Department of Homeland Security ("DHS") issued a policy which provides that noncitizens who entered the United States without admission or parole are "applicants for admission" and therefore subject to 8 U.S.C. § 1225(b), a statutory provision which mandates detention.  Doc. 1 at ¶¶ 36–37.  In *Matter of Yajure Hurtado*,

---

[2] This section includes information from petitioner's verified petition and the parties' other filings.  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit."  *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir. 1987)).

[3] Petitioner has been convicted of several misdemeanor offenses while in the United States.  *See* Doc. 11-1, Cruz Decl. at ¶¶ 11–13.  Neither party argues that these convictions would render him ineligible for a bond hearing under 8 U.S.C. § 1226(a) or subject him to detention under 8 U.S.C. § 1226(c).  *See* Doc. 1 at ¶ 47; Doc. 11.

1   29 I&N Dec. 216 (BIA 2025), the Board of Immigration Appeals agreed with DHS's new reading
2   of the statute. *Id.* ¶ 38.
3       On December 10, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1;
4   petitioner filed a motion for temporary restraining order on December 13, 2025, Doc. 6. He
5   presents seven claims for relief, primarily arguing that 8 U.S.C. § 1225(b) does not apply to him
6   and that he should be immediately released, or alternatively, provided with a bond hearing under
7   8 U.S.C. § 1226(a). Doc. 1 at ¶¶ 51–74. Respondents filed an opposition to the motion for
8   temporary restraining order on December 18, 2025. Doc. 11.

9   **II.     Conversion of the Motion**

10      When the Court set a briefing schedule, it directed respondents to state their position on
11  whether the motion for temporary restraining order should be converted to a motion for
12  preliminary injunction and whether they requested a hearing on the motion. Doc. 7. Respondents
13  do not object to converting the motion and do not request a hearing. *See* Doc. 11 at 1. Given that
14  the standard for issuing a temporary restraining order and preliminary injunction is the same, *see*
15  *Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001), and
16  respondents had notice and opportunity to respond in opposition, *see* Doc. 11, petitioner's motion
17  is converted to a motion for preliminary injunction.

18  **III.    Legal Standard**

19      The standards for issuing a temporary restraining order and a preliminary injunction are
20  "substantially identical." *See Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.,* 240 F.3d 832, 839
21  n.7 (9th Cir. 2001). "A preliminary injunction is an extraordinary remedy never awarded as of
22  right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553
23  U.S. 674, 689–90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is
24  likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of
25  preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the
26  public interest." *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of*
27  *Gambell, AK*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12
28  (1982)). "Likelihood of success on the merits is a threshold inquiry and is the most important

factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

**IV.    Discussion**

    **a.  Likelihood of Success on the Merits**

Petitioner primarily argues that DHS's new policy and the BIA's decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), are based on an erroneous interpretation of the statute, and that his detention pursuant to 8 U.S.C. § 1225(b)(2)(A) is not authorized by the Immigration and Nationality Act. *See* Doc. 6-3 at 10–26.

        **i.  Statutory Framework**

Two statutory sections govern the detention of noncitizens prior to a final order of removal: 8 U.S.C. §§ 1225 and 1226.  Section 1225 governs the detention of noncitizens seeking admission into the United States. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).  As relevant here, section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an *alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added).[4]  "A noncitizen detained under [s]ection 1225(b)(2) may be released only if he is paroled 'for urgent humanitarian reasons or significant public benefit' pursuant to 8 U.S.C. § 1182(d)(5)(A)." *Gomes v. Hyde*, 25 Civ. 11571, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025).  "Other than this limited exception[,] . . . detention under § 1225(b)(2) is considered mandatory . . . [and] [i]ndividuals

---

[4] The statute defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1).

detained under § 1225 are not entitled to a bond hearing." *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *3 (S.D.N.Y. Aug. 13, 2025).

While section 1225 "authorizes the Government to detain certain aliens *seeking admission into the country*," section 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289 (emphasis added). Section 1226(a) sets out the "default rule" for noncitizens already present in the country. *Id.* at 288. It provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. . . . [T]he Attorney General--
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on--
> (A) bond . . . ; or
> (B) conditional parole . . . .

8 U.S.C. § 1226(a). "Section 1226(a), therefore, establishes a discretionary detention framework." *Lopez Benitez*, 2025 WL 2371588, at *3 (internal citations omitted). An immigration officer makes the initial determination to either detain or release the noncitizen, but after that decision has been made, the noncitizen may request a bond hearing before an immigration judge. 8 C.F.R. § 1236.1(c)(8), (d)(1). At any such bond hearing, "the burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'" *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

### ii.  Section 1225(b)(2)(A)

Respondents argue that section 1225(b)(2)(A) applies to nearly all noncitizens present in the United States without admission. Respondents argue that because petitioner meets the definition of an "applicant for admission," he is also automatically "seeking admission" and must be detained under section 1225(b)(2)(A). *See* Doc. 11 at 4–6. Their interpretation would collapse the terms "applicant for admission" and "alien seeking admission" into the same definition, disregarding Congress's use of the different terms.

5

Respondents' interpretation of the statute is unpersuasive because it: (1) disregards the plain meaning of section 1225(b)(2)(A), (2) disregards the relationship between sections 1225 and 1226, (3) would render a recent amendment to section 1226(c) superfluous, and (4) is inconsistent with decades of prior statutory interpretation and practice. As another recent decision on this issue noted, "[t]he overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen in Petitioner's position who has resided in the United States for many years." *Aquino v. LaRose*, No. 25-CV-2904-RSH-MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases).[5]

First, respondents' proposed interpretation of the statute ignores the plain meaning of the phrase "seeking admission." *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *6 (D. Mass. July 24, 2025). The statute provides for mandatory detention if the examining immigration officer "determines that an *alien seeking admission* is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). The Court agrees with the analysis in *Martinez* and *Lopez Benitez* finding that the phrase "seeking admission" means the noncitizen must be actively "seeking" "lawful entry." *See id.*; *Lopez Benitez*, 2025 WL 2371588, at *7. But petitioner is not actively "seeking" "lawful entry" because he already *entered* the United States over thirty years ago. *See Lopez Benitez*, 2025 WL 2371588, at *7; *Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025) ("'[S]eeking admission' implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.").

As the Supreme Court noted in *Jennings*, section 1225 applies "at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the

---

[5] Also, as other courts have concluded, "[f]or section 1225(b)(2)(A) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *2 (D. Mass. July 24, 2025); *see also Lopez Benitez*, 2025 WL 2371588, at *5. As an initial matter, respondents have failed to show in this case that an "examining immigration officer" made these determinations.

country is admissible." *Jennings*, 583 U.S. at 287. Section 1225 "authorizes the Government to detain certain aliens *seeking admission* into the country," whereas section 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Id.*, 583 U.S. at 289 (emphasis added).

Respondents have failed to show that, over 30 years after he entered the country, petitioner was actively "seeking admission." The government's "selective reading of the statute . . . ignores its 'seeking admission' language." *Martinez*, 2025 WL 2084238, at *6. "If, as the government argues, [section] 1225(b)(2)(A) was intended to apply to all 'applicant[s] for admission,' there would be no need to include the phrase 'seeking admission' in the statute." *Lopez Benitez*, 2025 WL 2371588, at *6. The rule against surplusage counsels that "'every clause and word of a statute' should have meaning." *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883)); *League of California Cities v. Fed. Commc'ns Comm'n*, 118 F.4th 995, 1019 (9th Cir. 2024) ("The rule against surplusage generally prohibits [a court] from interpreting [a statute] in a way that 'mak[es] a part of it unnecessary.'" (quoting *NLRB v. Aakash, Inc.*, 58 F.4th 1099, 1105 (9th Cir. 2023)). Respondents' position would eliminate the significance of the "seeking admission" language. *See Martinez*, 2025 WL 2084238, at *6; *Lopez Benitez*, 2025 WL 2371588, at *6.

Second, respondents' argument disregards the context of sections 1225 and 1226 and the broader statutory scheme. The title of section 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." 8 U.S.C. § 1225. "Inspection" is a process that typically occurs at the border or other ports of entry. *See Posos-Sanchez v. Garland*, 3 F.4th 1176, 1183 (9th Cir. 2021) (explaining that "inspection and authorization" must "take place at a 'port of entry'" for one to be considered to have "lawfully entered"); 8 C.F.R § 235.1(a) ("Application to lawfully enter the United States shall be made in person to an immigration officer at a U.S. port-of-entry when the port is open for inspection.").[6]

---

[6] For example, section 1225(a)(2) prohibits the admission of "stowaways"—noncitizens "who obtain[] transportation without the consent of the owner . . . of any vessel or aircraft through concealment aboard such vessel or aircraft," 8 U.S.C. § 1101(a)(49)—who would presumably be discovered at the border or a port of entry. 8 U.S.C. § 1225(a)(2).

7

The title of section 1225 also refers to "expedited removal," which applies to a noncitizen "who is arriving in the United States" and "is inadmissible." *See* 8 U.S.C. § 1225(b)(1)(A). There are no similar references in section 1226. *See* 8 U.S.C. § 1226.[7]

Third, respondents' application of section 1225(b)(2)(A) to noncitizens already in the country would render superfluous a recent amendment to section 1226(c). *See Gomes*, 2025 WL 1869299, at *5. Although section 1226(a) sets out a discretionary detention scheme, section 1226(c) provides an exception which mandates detention for certain criminal noncitizens. *See* 8 U.S.C. § 1226(c)(1)(E). Section 1226(c)(1)(E), which was added to the statute in 2025 by the Laken Riley Act, mandates detention for any noncitizen (i) who is inadmissible under section 1182(a)(6)(A)(i) as an "alien present in the United States without being admitted or paroled," *and* (ii) who "is charged with, arrested for, convicted of, or admits" to committing certain crimes. 8 U.S.C. § 1226(c)(1)(E) (emphasis added); *see Gomes*, 2025 WL 1869299, at *5 (explaining statutory section).

If every "applicant for admission"—which is defined, as relevant here, as an "alien present in the United States who has not been admitted," *see* 8 U.S.C. § 1226(a)(1)—is already subject to mandatory detention under section 1225(b)(2)(A), as respondents contend, there would have been no need for the new section 1226(c)(1)(E), which mandates detention for every noncitizen who is "present in the United States without being admitted or paroled" *and* who has been "charged with, arrested for, or admits to" committing certain crimes, *see* 8 U.S.C. § 1226(c)(1)(E). Reading section 1225 as respondents propose would thus render section 1226(c)(1)(E) superfluous. *See Gomes*, 2025 WL 1869299, at *5; *Lopez Benitez*, 2025 WL 2371588, at *7; *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *11 (D. Mass. Aug. 19, 2025); *Maldonado v. Olson*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025) ("The Court will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2).").

---

[7] Section 1226 references circumstances that logically would occur inside the country, such as the detention of certain criminal non-citizens upon their release from a correctional facility and the issuance of detainers to "State [or] local officials." *See* 8 U.S.C. § 1226(c)(1), (3).

"When Congress acts to amend a statute, [the Court] presume[s] it intends its amendment to have real and substantial effect." *See Stone v. I.N.S.*, 514 U.S. 386, 397 (1995); *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."). Section 1226(c)(1)(E) is a detention provision; that is its purpose. *See* 8 U.S.C. § 1226(c)(1)(E). If all noncitizens present in the United States without lawful admission were subject to mandatory detention under section 1225(b)(2)(A) already—as respondents argue—the addition of section 1226(c)(1)(E) would have been pointless. *Maldonado*, 2025 WL 237441, at *12 ("If § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless.").

Petitioner's arrest on a warrant issued under section 1226 further undermines respondents' argument that he is subject to mandatory detention under section 1225(b)(2)(A). Section 1226(a) "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings," *Jennings*, 583 U.S. at 289, "and it applies when a noncitizen is 'arrested and detained' '[o]n a warrant issued by the Attorney General.'" *Gomes*, 2025 WL 1869299, at *5 (quoting 8 U.S.C. § 1226(a) and finding it applies to those "already in the country"); *see also Lopez Benitez*, 2025 WL 2371588, at *10 (same). While respondents deny that they are detaining petitioner under section 1226(a), they arrested petitioner on a warrant issued under section 1226(a). *See* Doc. 11-1, Ex. 3.

The government does not argue that any detention provision other than section 1225(b)(2)(A) applies to petitioner, and it appears that the only provision that could have applied is the "default rule" of section 1226(a), which "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 288–89. The government previously applied section 1226(a) to noncitizens, such as petitioner, who entered the country without admission. *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 n.6 (B.I.A. 2025) ("We acknowledge that for years Immigration Judges have conducted [section 1226(a)] bond hearings for aliens who entered the United States without inspection."); Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal

Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."); *Martinez*, 2025 WL 2084238, at *6. The government's longstanding practice, under which section 1226(a), and not section 1225(b)(2)(A), would have applied to petitioner's circumstances, is consistent with the text and statutory scheme. *See, e.g.*, *Lopez Benitez*, 2025 WL 2371588, at *8 (reaching same conclusion).

The argument that section 1225(b)(2)(A) applies to petitioner also disregards the different due process considerations at issue for noncitizens encountered at the border or ports of entry, versus for noncitizens who have established residence in this country. As the court in *Romero* noted, applying section 1225 to those stopped at the border and section 1226 to those already in the country "is consistent with the long history of our immigration laws and with the Constitution."[8] *Romero*, 2025 WL 2403827, at *12–13; *see also Lopez-Campos*, 2025 WL 2496379, at *9–10 (finding that the government's application of section 1225(b)(2)(A) in similar circumstances violated detainee's due process rights).

In sum, the Court concludes that petitioner is likely to succeed on the merits of his claim that his detention pursuant to section 1225(b)(2)(A) violates the Immigration and Nationality Act.[9]

### b. Irreparable Harm

Turning to the second *Winter* factor, petitioner has established that he will be irreparably harmed absent a preliminary injunction. "The government has taken the position that in the absence of preliminary injunctive relief, it remains free to subject [petitioner] to mandatory detention under section 1225(b)(2), a provision that is not applicable to [him], and provide [him]

---

[8] This consideration, and the fact that the government's new interpretation of the statute conflicts with years of prior interpretation, also shows that petitioner has established that there are serious questions going to the merits of his claims regarding the statute's interpretation.

[9] Given that petitioner is entitled to the relief he seeks in his motion based on his successful showing as to this claim, for purposes of the present motion the Court need not address petitioner's remaining claims.

with no additional process to challenge [his] detention." *Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, 2025 WL 2741654, at *12 (N.D. Cal. Sept. 26, 2025). "Obviously, the [unlawful deprivation] of liberty is a . . . severe form of irreparable injury." *Ferrara v. United States*, 370 F. Supp. 2d 351, 360 (D. Mass. 2005). Thus, the misapplication of section 1225(b) causes "immediate and irreparable injury." Doc. 11 at 9, *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01874-SSS-BFM (C.D. Cal. July 28, 2025); *Valencia Zapata*, 2025 WL 2741654, at *12.

### c. Balance of Hardships and Public Interest

When the government is the nonmoving party, "the last two *Winter* factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025). Faced with a choice "between [these minimally costly procedures] and preventable human suffering," the Court concludes "that the balance of hardships tips decidedly in [petitioner's] favor." *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

The public interest also weighs in petitioner's favor. "The public has a strong interest in upholding procedural protections . . ., and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021).

### d. Remedy

The purpose of a preliminary injunction is to return the parties to the status quo ante, which is "not simply [] any situation before the filing of a lawsuit, but instead [] 'the last uncontested status which preceded the pending controversy.'" *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000). Respondents argue that petitioner was detained on November 25, 2025 pursuant to section 1225(b)(2)(A). As section 1225(b)(2)(A) does not apply to petitioner, petitioner has shown a likelihood of success on his claim that the government may not detain him under that statute. Given that the government does not assert any other basis for petitioner's detention and does not argue that petitioner presents a flight risk or danger, the

11

appropriate remedy is petitioner's immediate release.  If the government seeks to re-detain petitioner, it must provide no less than seven (7) days' notice to petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which petitioner's eligibility for bond must be considered.

### V.     Conclusion and Order

Accordingly, petitioner's motion for preliminary injunction, Doc. 6, is GRANTED.  The Court ORDERS that respondents release petitioner immediately.  If the government seeks to re-detain petitioner, it must provide no less than seven (7) days' notice to petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which petitioner's eligibility for bond must be considered.

The security bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this, and the government has not established a need to impose a security bond.

This matter is referred to the assigned magistrate judge for further proceedings including the preparation of findings and recommendations on the petition or other appropriate action.

IT IS SO ORDERED.

Dated:     December 23, 2025

UNITED STATES DISTRICT JUDGE